O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

HUMBERTO ROMERO,                    ) Case No. EDCV 12-0615-JPR
                                    )
                Plaintiff,          )
                                    )
        vs.                         ) MEMORANDUM OPINION AND ORDER
                                    ) AFFIRMING THE COMMISSIONER
CAROLYN W. COLVIN, Acting           )
Commissioner of Social              )
Security,[1]                        )
                                    )
                Defendant.          )
                                    )

I.    **PROCEEDINGS**

    Plaintiff seeks review of the Commissioner's final decision

denying his application for Social Security disability insurance

benefits ("DIB") and Supplemental Security Income benefits

("SSI").  The parties consented to the jurisdiction of the

undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).

This matter is before the Court on the parties' Joint

Stipulation, filed January 2, 2013, which the Court has taken

_____

    [1]    On February 14, 2013, Colvin became the Acting
Commissioner of Social Security.  Pursuant to Federal Rule of
Civil Procedure 25(d), the Court therefore substitutes Colvin for
Michael J. Astrue as the proper Respondent.

under submission without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed and this action is dismissed.

**II.  BACKGROUND**

Plaintiff was born on February 17, 1951.  (Administrative Record ("AR") 32.)  He has some elementary-school education and speaks "some" English.  (AR 32-33, 218.)  Plaintiff previously worked as a warehouse worker and assembler.  (AR 43.)

On April 10, 2009, Plaintiff filed applications for DIB and SSI.  (AR 14, 60-61.)  Plaintiff alleged that he had been unable to work since April 20, 2007, because of his status after hip replacement, osteoarthritis of the left shoulder, obesity, and a mood disorder.  (Id.)  His applications were denied initially, on July 14, 2009 (AR 80-85), and upon reconsideration, on October 23, 2009 (AR 88-93).

After Plaintiff's applications were denied, he requested a hearing before an ALJ.  (AR 94-97.)  A hearing was held on October 19, 2010, at which Plaintiff, who was represented by counsel, appeared and testified through an interpreter; a medical expert, a vocational expert ("VE"), and Plaintiff's son also testified.  (AR 29-54.)  In a written decision issued on December 8, 2010, the ALJ determined that Plaintiff was not disabled.  (AR 8-28.)  On March 28, 2012, the Appeals Council denied Plaintiff's request for review.  (AR 1-5.)  This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and

2

supported by substantial evidence based on the record as a whole. § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); <u>Parra v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla but less than a preponderance.  <u>Lingenfelter</u>, 504 F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1996).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  <u>Id.</u> at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   <u>The Five-Step Evaluation Process</u>

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R.

3

§§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform his past work; if so, the claimant is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv),

---

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  20 C.F.R. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

416.920(a)(4)(iv).  The claimant has the burden of proving that he is unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  <u>Id.</u>  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  That determination comprises the fifth and final step in the sequential analysis.  §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

     B.    The ALJ's Application of the Five-Step Process

     At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since April 20, 2007.  (AR 16.)  At step two, the ALJ concluded that Plaintiff had the severe impairments of "status post hip replacement, osteoarthritis of the left shoulder and lumbar spine, and obesity."  (AR 16.)  He concluded that Plaintiff's "medically determinable mental impairment of mood disorder" was not severe.  (AR 17-18.)  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing.  (AR 18.)  At step four, the ALJ found that Plaintiff retained the RFC to perform "less than the full range of medium work," with certain additional limitations.  (AR 18-19.)  Based on the VE's testimony, the ALJ concluded that Plaintiff was unable to perform any past relevant work as actually or generally performed.  (AR 22.)  At step five, the ALJ concluded that Plaintiff was not disabled under the framework of the Medical-Vocational

1  Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and that
2  jobs existed in significant numbers in the national economy that
3  Plaintiff could perform.  (AR 22-23.)  Based on the VE's
4  testimony, the ALJ found that Plaintiff could perform such jobs
5  as hand packager (DOT 920.587-018, 1991 WL 687916) and dining
6  room attendant (DOT 311.677-018, 1991 WL 672696).  (AR 23.)
7  Accordingly, the ALJ determined that Plaintiff was not disabled.
8  (Id.)

9  **V.   DISCUSSION**

10      Plaintiff alleges that the ALJ erred in (1) finding that his
11  mental impairment was not severe; (2) evaluating the lay-witness
12  testimony of Plaintiff's son; and (3) evaluating Plaintiff's
13  credibility.[3]  (J. Stip. at 3-4.)

14      A.   <u>The ALJ Did Not Err in Determining that Plaintiff's</u>
15           <u>Mood Disorder Was Not a Severe Impairment</u>

16      Plaintiff first contends that the ALJ erred in determining
17  that his mood disorder was not a severe impairment.  (J. Stip. at
18  3-6.)  Reversal is not warranted on this basis because
19  substantial evidence in the record supports the ALJ's finding
20  that Plaintiff's mood disorder was not severe.

21      1.   <u>Applicable law</u>

22      At step two of the sequential evaluation process, a
23  plaintiff has the burden to present evidence of medical signs,
24  symptoms, and laboratory findings that establish a medically
25  determinable physical or mental impairment that is severe and can

26  _____

27      [3]   The Court addresses Plaintiff's contentions in an order
28  different from that used by the parties, to avoid repetition and
    for other reasons.

be expected to result in death or last for a continuous period of at least 12 months. <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D));[4] <u>see</u> 20 C.F.R. §§ 404.1520, 416.920, 404.1509, 416.909. Substantial evidence supports an ALJ's determination that a claimant is not disabled at step two when "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." <u>Ukolov</u>, 420 F.3d at 1004-05 (citing SSR 96-4p). An impairment may never be found on the basis of the claimant's subjective symptoms alone. <u>Id.</u> at 1005.

Step two is "a de minimis screening device [used] to dispose of groundless claims." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996). Applying the applicable standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005); <u>see also</u> <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."). An impairment or combination of impairments is "not severe" if the evidence

---

[4]   A "medical sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques." <u>Ukolov</u>, 420 F.3d at 1005.

established only a slight abnormality that had "no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (citation omitted).

### 2.   Relevant facts

On April 27, 2007, Plaintiff was seen at Upland Community Counseling by a clinician, Julie Porter, under the supervision of Dr. Guia Montenegro, because of "depressive and psychotic" symptoms.   (AR 336-41.)   After speaking with Plaintiff and his daughter, Porter noted that Plaintiff was "extremely unresponsive," reported eating and sleeping poorly, and was capable of "very limited" "self-care."   (AR 336-37.)   Based on speaking to his daughter, she noted that he appeared to have been depressed for the past two years but with a "recent onset of psychotic features (paranoia, delusional thinking)," in the preceding two weeks.   (Id.)   She diagnosed Plaintiff with "psychotic disorder [not otherwise specified]" and assessed a Global Assessment of Functioning ("GAF") score of 20.[5]   (AR 341.)

Plaintiff was prescribed medications for his depression and visited Dr. Montenegro approximately every one to two months between 2007 and 2010 for checkups.   (AR 342-44, 447-49.)   On January 25, 2008, Dr. Montenegro diagnosed Plaintiff with bipolar disorder and assessed a GAF score of 45.[6]   (AR 341.)   His

---

[5]   A GAF score of 20 indicates "[s]ome danger of hurting self or others," "occasionally fail[ing] to maintain minimal personal hygiene," or "gross impairment in communication."   See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

[6]   A GAF score of 45 indicates "serious symptoms ([e.g.] suicidal ideation . . .) OR any serious impairment in social, occupational or school functioning."   See Am. Psychiatric Ass'n,

1   treatment notes between 2007 and 2010, however, indicate that
2   Plaintiff's symptoms markedly improved on medications and he had
3   few, if any, ongoing issues.  (See AR 345-66, 418-61.)  For
4   example, in May 2007, just a month after Plaintiff's original
5   symptoms of psychosis, Dr. Montenegro noted that Plaintiff's
6   affect was "better," he was "able to answer questions more than
7   the last visit," and his paranoia was "still present, but
8   improved."  (AR 365.)  In July 2007 Dr. Montenegro noted that
9   Plaintiff's affect was "improved," he was "more verbal," his
10  sleeping and eating habits had improved, and he had increased
11  energy.  (AR 362.)  In October 2007, Dr. Montenegro noted that
12  Plaintiff's affect was "markedly improved" and his "depression is
13  completely controlled."  (AR 358.)  In May 2008, Dr. Montenegro
14  noted that Plaintiff rode his bike on his own to his appointment,
15  denied auditory and visual hallucinations and paranoia, and had a
16  "good" appetite and a "stable" mood.  (AR 351.)  In April 2009,
17  Dr. Montenegro noted that Plaintiff came to his appointment by
18  himself, was "alert" and "compliant with medications," denied
19  auditory and visual hallucinations and paranoia, and was eating
20  and sleeping normally.  (AR 345.)  In March 2010, Dr. Montenegro
21  noted that Plaintiff came to his appointment by himself, had lost
22  15 pounds by dieting and walking 30 minutes a day for exercise,
23  denied auditory and visual hallucinations and paranoia, denied
24  being depressed, and had "no problems with meds."  (AR 418.)  In
25  August 2010, the most recent treatment notes in the record, Dr.
26  Montenegro noted that Plaintiff "came in good spirits," was

27  ─────────────────────
28  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.
    2000).

1  "compliant [with] medications," "feels better," "denies
2  depression," slept 10-11 hours a night, "watches his diet [and]
3  exercises," "walks 3 miles per day," denied audio and visual
4  hallucinations and paranoia, and had no problems with his
5  medications.  (AR 458.)

6       On August 27, 2007, Plaintiff was evaluated by consulting
7  psychiatrist Dr. Ernest Bagner.  (AR 303-06.)  Dr. Bagner
8  diagnosed Plaintiff with "depressive disorder, not otherwise
9  specified," and assessed a GAF score of 73.[7]  (AR 305.)  He noted
10 that Plaintiff had a "good" relationship with his friends and
11 family; his affect was "mood congruent"; his thought processes
12 were "tight"; his intellectual functioning was average; he was
13 "alert to person and place"; he had adequate fund of knowledge,
14 memory, concentration, abstractions, insight, and judgment; and
15 there was "no evidence of auditory or visual hallucinations" or
16 "paranoid or grandiose delusions."  (AR 304-05.)  Dr. Bagner
17 concluded that Plaintiff "does self-care and other activities of
18 daily living," "gets along well with family and friends," and, if
19 he "continues with psychiatric treatment, . . . should be
20 significantly better in less than six months."  (AR 305-06.)  Dr.
21 Bagner opined that Plaintiff would have "no limitations
22 interacting with supervisors, peers or the public," "zero to mild
23 limitations maintaining concentration and attention and

24

25      [7]  A GAF score of 73 indicates that "[i]f symptoms are
26 present, they are transient and expectable reactions to
   psychosocial stressors" and "no more than slight impairment in
27 social, occupational or school functioning."  See Am. Psychiatric
   Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34
28 (4th ed. 2000).

completing simple tasks," "mild limitations completing complex tasks and completing a normal workweek without interruption," and "mild to moderate limitations handling normal stresses at work." (AR 306.)

On September 5, 2007, consulting psychiatrist Dr. H. Amado evaluated Plaintiff and filled out a Mental Residual Functional Capacity Assessment form, noting that Plaintiff was "moderately limited" in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. (AR 312-13.)  He found that Plaintiff was "not significantly limited" in any other respect. (Id.)  On the same day, Dr. Amado also completed a Psychiatric Review Technique form, noting that Plaintiff had depressive disorder, not otherwise specified, but that insufficient evidence supported any other limitations. (AR 315-22.)  He noted that Plaintiff had "moderate" difficulties in maintaining concentration, persistence, or pace, "mild" restrictions of activities of daily living and difficulties in maintaining social functioning, and no episodes of decompensation. (AR 323.)  He noted that Plaintiff "has some degree of psychomotor retardation . . . and mild/moderate problems with sustained concentration . . . while the functional information as per third-party seems to convey fairly pervasive depression." (AR 325.)  He concluded that although "[t]he proposed Non-severe determination may be a little too optimistic

11

in this case," he "agree[d] that listings are not met and

therefore allegations are only partially supported."  (AR 325.)

On June 3, 2009, Plaintiff underwent another consultative

psychiatric evaluation, by psychiatrist Dr. H. Skopec.  (AR 367-

77.)  Dr. Skopec noted that Plaintiff had depression and "mild"

restrictions of activities of daily living, "mild" difficulties

in maintaining social functioning and concentration, persistence,

or pace, and no episodes of decompensation.  (Id.)  He concluded

that Plaintiff was "partially credible" but "the psychiatric

[symptoms] do not significantly decrease [Plaintiff's] ability to

function."  (AR 377.)

On June 22, 2007, Plaintiff's son Humberto Romero, Jr.,

filled out a Third Party Function Report, stating that Plaintiff

was "depressed," "hardly eats," refused to care for his personal

needs, had lost interest in cooking and doing chores, was "scared

to go outside," was unable to manage money, no longer pursued his

hobbies of "gardening, watching TV, [and] working on cars," was

"isolated" and "withdrawn from friends," could not handle "any

stress at all," and was "paranoid."  (AR 224-31.)  On the same

day, Plaintiff filled out a Function Report providing

substantially the same information.  (AR 235-42.)

On April 26, 2009, Humberto Jr. filled out another Third

Party Function Report,[8] stating that Plaintiff's daily activities

_____

[8]    Plaintiff's son gives his name as "Robert" on this
form, whereas the June 2007 form lists his name as "Humberto R.
Romero."  The handwriting is the same on both forms, and it
appears that "Robert" may be Plaintiff's son's middle name.  (See
AR 224, 255.)  For clarity, the Court refers to him as "Humberto
Jr."  (See AR 46.)

consisted of "eat[ing], sleep[ing], tak[ing] meds, and watch[ing] TV" and then falling asleep, and "once a week [he] takes out trash." (AR 254.) He stated that Plaintiff "sleeps at odd hours (during day) and is lethargic," needed help with grooming and personal care, and could not prepare meals. (AR 255-56.) He also stated that Plaintiff mowed the lawn for 30 minutes every two weeks and took out the trash for 15 minutes every week; went outside for approximately one hour a day; did grocery shopping once a week for 30 minutes; watched TV for two to three hours daily; was able to "talk and share meals with family members"; and went to the doctor's office and to church. (AR 256-58.) He stated that Plaintiff could not follow written instructions well but could follow "very simple" spoken instructions and did not have any problems with authority figures. (AR 259-60.) He stated that "stress dampens disabled person['s] performance and accuracy" and "disabled person does not respond well to changes in routine." (AR 260.) He concluded by stating that Plaintiff could drive "very little" "for short trips during the day" and otherwise "walks to the local market and is driven everywhere else"; Plaintiff was "socially withdrawn from church and cares little of his physical appearance"; Plaintiff "lacks clarity of thought and many times has trouble following simple directions"; and Plaintiff's "mental sharpness is clouded and does not function at a normal level." (AR 261.) On the same day, Plaintiff filled out a Function Report providing substantially the same information. (AR 262-69.)

    At the hearing, Plaintiff testified that he could not work because he had ongoing problems with his hip, left knee, and

1    right shoulder after he was injured in a fall in 2006.  (AR 34-
2    35, 295-96.)  Although Plaintiff testified that he took
3    medications for his pain (AR 36), the only prescribed medications
4    appearing in the record were for depression, cholesterol, and
5    diabetes (AR 251, 283).  The ALJ asked Plaintiff if he had "any
6    other medical conditions, either physical or mental," that he
7    claimed were disabling besides those stemming from his fall, and
8    Plaintiff replied "no, none."  (AR 35.)  The ALJ then asked if
9    Plaintiff's complaints "involve your hip, left knee, and you hit
10   your head and your right shoulder?" and Plaintiff responded,
11   "Yes."  (Id.)  It was only when later prompted by his attorney
12   that Plaintiff testified that he also had "emotional problems"
13   that limited his ability to work.  (Id.)  Plaintiff testified
14   that he "felt a lot of anxiety" when he first sought psychiatric
15   treatment in 2007, after having hip surgery, but answered "no"
16   when asked if he had "any other kinds of mental health symptoms."
17   (AR 35-36.)  He testified that he had problems remembering things
18   "at times," but he "slept well at night . . . 10 or 11 hours."
19   (AR 36.)

20        Medical Expert Dr. Craig Rath then testified that he had
21   reviewed the medical evidence in the record, and it indicated
22   that Plaintiff had a medically determinable impairment of "mood
23   disorder not otherwise specified, with depression and anxiety
24   present."  (AR 39.)  Dr. Rath then summarized the treatment notes
25   from Dr. Montenegro and noted that they indicated that
26   Plaintiff's symptoms improved after he was placed on medication,
27   in April 2007; Dr. Rath concluded that Plaintiff "had an
28   emotional reaction to his physical situation which didn't last

14

very long, so there are durational issues and severity issues, and no limitations." (AR 40.) When questioned by Plaintiff's attorney, Dr. Rath reiterated that Plaintiff appeared to have been "depressed for a short period of time with possibly some psychotic symptoms, and he remained at some level of depression and anxiety, but not so bad to be psychotic." (AR 41.) He stated that a GAF score of 45 indicated "severe depression" but that that score in January 2008 was not indicative of Plaintiff's symptoms at that time because Dr. Montenegro did not perform a "multiaxial diagnosis" to update the GAF score but instead noted Plaintiff's progress in clinical notes. (AR 41-42.)

Humberto Jr. also testified at the hearing. (AR 46-52.) He testified that Plaintiff stopped working in April 2007 after "an onset of major depression," for which he started seeing Dr. Montenegro. (AR 48.) He testified that Plaintiff had anxiety, severe depression, and psychotic symptoms until he started seeing Dr. Montenegro, who put him on medication. (AR 48-49.) He stated that Plaintiff exercised and helped with grocery shopping, and he "tried" to look for work but had trouble finding jobs he was qualified to do. (AR 50-51.) He testified that Plaintiff's condition was "managed pretty much with the medications" and exercises, and his depression was "a little bit better, . . . a little bit more stable" after he started taking psychiatric medication, though his symptoms worsened when he didn't take his medication. (Id.)

        3.  Analysis

    In his written decision, the ALJ found that "a thorough review of the objective record supports the diagnosis of mood

disorder, [not otherwise specified] with symptoms of depression and anxiety" and that Plaintiff was "severely depressed for a brief period of time, likely with psychotic features," but his depression stabilized with medication and was not severe after that brief period.  (AR 17.)  The ALJ summarized the medical evidence from Dr. Bagner and Dr. Montenegro that indicated that Plaintiff's mood improved with medication, and he also noted that during the hearing Plaintiff said he had no impairments other than physical ones until his attorney prompted him to testify about his "emotional problems."  (AR 17-18.)  He concluded by finding that Plaintiff's

> mood disorder is a non-severe impairment because it results in only minimal limitations of functioning. Specifically, there are mild restrictions of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace.  Furthermore, there are no episodes of decompensation.  This is supported by the findings of two reviewing physicians for the State agency who opined the claimant's mental impairment was non-severe.   This opinion is assessed great weight because it is consistent with the evidence of record and the medical expert's opinion.

> Thus, the claimant's medically determinable mental impairment does not cause minimal limitations in the claimant's ability to perform basic mental work activities and is therefore non-severe.

(AR 18 (citations omitted).)

1    Substantial evidence supports the ALJ's finding that
2    Plaintiff's mood disorder was not severe.  Although evidence in
3    the record shows that Plaintiff had some type of mood disorder,
4    the existence of a mood disorder alone does not constitute a
5    severe impairment if it does not prevent a person from working.
6    See 20 C.F.R. § 404.1520(c) (severe impairment is one that
7    "significantly limits [claimant's] physical or mental ability to
8    do basic work activities"), § 416.920(c) (same).  Dr.
9    Montenegro's notes from May 2007 to August 2010 show that
10   Plaintiff's condition improved steadily after he was placed on
11   medication, and by as early as October 2007 Plaintiff's affect
12   was "markedly improved" and his depression was "completely
13   controlled."  (AR 358; see AR 342-44, 447-49.)  All the way up
14   until August 2010, Plaintiff continued to show few, if any,
15   symptoms.  In August 2010, just two months before the ALJ hearing
16   and the most recent notes in the record, Dr. Montenegro noted
17   that Plaintiff was "in good spirits," was "compliant [with]
18   medications," "feels better," "denies depression," slept 10 to 11
19   hours a night, "watches his diet [and] exercises," "walks 3 miles
20   per day," denied audio and visual hallucinations and paranoia,
21   and had no problems with his medications.  (AR 458.)  Drs.
22   Bagner's and Skopec's reports showed that Plaintiff's mood
23   disorder caused no more than minimal limitations on his ability
24   to work.  (See AR 303-06, 312-25, 367-77.)  Based on the
25   aforementioned evidence, the ALJ reasonably concluded that
26   Plaintiff's mood disorder was effectively controlled with
27   medication and did not affect his ability to work.  (AR 17); see
28   20 C.F.R. § 404.1529(c)(4)(iv) (ALJ may consider effectiveness of

medication in evaluating severity and limiting effects of impairment), § 416.929(c)(4)(iv) (same); <u>Beck v. Astrue</u>, 303 F. App'x 455, 457 (9th Cir. 2008) (holding that substantial evidence supported ALJ's finding that plaintiff's "sleep apnea and depression with anxiety are not severe impairments" because conditions could be "controlled effectively" with treatment and medical records "[did] not indicate any severe problems"); <u>Warre v. Comm'r of Soc. Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); <u>see also</u> <u>Fields v. Astrue</u>, No. EDCV 07-1442-JTL, 2008 WL 4384248, at *7 (C.D. Cal. Sept. 3, 2008) (holding that substantial evidence supported ALJ's finding that plaintiff's depression was "not severe and adequately controlled with mild anti-depressive medication with no more than mild functional limitations" because record showed that plaintiff "responds well to medications").

Dr. Rath's hearing testimony also supported the ALJ's determination that Plaintiff's mood disorder was not severe.  The ALJ found that Dr. Rath's opinion was consistent with the medical record.  (AR 17.)  Substantial evidence supported that finding; as noted above, virtually all of the medical evidence in the record showed that Plaintiff's mood disorder was effectively treated with medication and was not severe.  The ALJ was therefore entitled to rely on Dr. Rath's corroborative testimony as further evidence that Plaintiff's mood disorder was not severe.  <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians

may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it" (citing Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)); see 20 C.F.R. §§ 404.1527(c)(4) (ALJ will generally give more weight to opinions that are "more consistent . . . with the record as a whole"), 416.927(c)(4) (same). Dr. Rath reviewed all of the medical evidence and heard Plaintiff testify before rendering his opinion. See 20 C.F.R. §§ 404.1527(c)(3) (in weighing medical opinions, ALJ "will evaluate the degree to which these opinions consider all of the pertinent evidence in [claimant's] claim, including opinions of treating and other examining sources"), 416.927(c)(3) (same). Moreover, the ALJ could credit Dr. Rath's opinion because he testified at the hearing and was subject to cross-examination. See Andrews, 53 F.3d at 1042 (greater weight may be given to nonexamining doctors who are subject to cross-examination).

    To the extent Plaintiff ever had a "severe" mood disorder, the ALJ properly found that it did not last very long. (AR 17.) An impairment is not severe unless it has lasted or is expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1520(a)(4)(ii) ("If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509 . . ., we will find that you are not disabled."), 416.920(a)(4)(ii) (same, referencing

19

1  durational requirement in § 416.909); id. §§ 404.1509 (impairment

2  "must have lasted or must be expected to last for a continuous

3  period of at least 12 months"), 416.909 (same).  Dr. Montenegro's

4  notes reflect that by May 2007, only a month after Plaintiff was

5  first diagnosed with depression, his symptoms had started to

6  improve (AR 365), and by October 2007 Plaintiff's affect was

7  "markedly improved" and his "depression [was] completely

8  controlled" (AR 358).  In August 2007, Dr. Bagner evaluated

9  Plaintiff, found that Plaintiff would have only mild to moderate

10  limitations handling normal stresses at work and zero to mild

11  limitations in all other aspects, diagnosed him with a GAF score

12  of 73 (indicating little to no impairment), and found that if he

13  continued with treatment Plaintiff "should be significantly

14  better in less than six months."  (AR 305-06.)  In September 2007

15  Dr. Amado evaluated Plaintiff and concluded that Plaintiff was

16  only moderately limited in certain abilities and not

17  significantly limited in any other respect.  (AR 312-13.)  After

18  reviewing the evidence, Dr. Rath agreed that Plaintiff's mood

19  disorder did not meet the 12-month durational requirement.  (AR

20  39-40.)  Substantial evidence thus supported the ALJ's finding

21  that Plaintiff's mood disorder, to the extent it was ever

22  "severe," did not last for the requisite 12 months.

23      Plaintiff argues that Dr. Montenegro's assessment of a GAF

24  score of 45 in January 2008 shows that Plaintiff's condition had

25  not improved over time.  (J. Stip. at 4-5.)  As an initial

26  matter, a score of 45 was an improvement over the score of 20

27  eight months earlier, before Plaintiff began taking medications

28  for his depression.  Dr. Rath testified that Dr. Montenegro's

1    treatment notes showed that Plaintiff's condition had improved,
2    the GAF score was likely a reflection of Plaintiff's past
3    condition, and nothing in the record indicated that it was
4    updated to show Plaintiff's progress after being treated for his
5    depression.  (AR 41-42.)  Dr. Bagner assessed a GAF score of 73
6    in August 2007 (AR 305), and nothing in the record indicates that
7    Plaintiff's condition worsened between then and January 2008 –
8    indeed, the record shows just the opposite (see AR 342-44, 447-
9    49).  Dr. Rath's testimony was thus consistent with the record.
10   Moreover, GAF scores "[do] not have a direct correlation to the
11   severity requirements in the Social Security Administration's
12   mental disorders listings," and an ALJ may properly disregard a
13   low GAF score if other substantial evidence supports a finding
14   that the claimant was not disabled.  Doney v. Astrue, 485 F.
15   App'x 163, 165 (9th Cir. 2012) (alterations and citations
16   omitted).  The only other medical evidence indicating that
17   Plaintiff's mood disorder may have been severe was Dr. Amado's
18   note in September 2007 – near the beginning of Plaintiff's mood
19   disorder – that "[t]he proposed Non-severe determination may be a
20   little too optimistic in this case." (AR 325.)  But Dr. Amado
21   also found that Plaintiff was not severely limited in performing
22   any mental tasks and agreed that Plaintiff's allegations of the
23   severity of his symptoms were not entirely credible.  (See AR
24   312-25.)  Any conflict in the properly supported medical-opinion
25   evidence was the sole province of the ALJ to resolve.  See
26   Thomas, 278 F.3d at 956-57.

27        The only other evidence in the record concerning Plaintiff's
28   mood disorder was his own testimony and that of his son.

21

1  Plaintiff and his son both stated at the hearing and in their
2  function reports that Plaintiff's depression essentially rendered
3  him incapable of caring for himself and performing all but the
4  most basic activities.  (See AR 35-36, 39-45, 224-31, 235-42,
5  254-61, 262-69.)  But as the ALJ noted, Plaintiff initially
6  testified that the only conditions preventing him from working
7  were physical impairments; he had to be prompted by his attorney
8  before he mentioned his mood disorder.  (See AR 18, 35-36.)
9  Moreover, Plaintiff's and his son's 2009 function reports
10 indicated that his condition had improved since 2007 – they both
11 noted in 2009 that Plaintiff was able to once again do such
12 chores as grocery shopping and mowing the lawn, went outside for
13 at least an hour each day whereas in 2007 he was afraid to go
14 outside, had resumed his hobby of TV watching, exercised
15 regularly, and once again was socializing with his family and
16 with his friends at church.  (See AR 254-61, 262-69.)  Humberto
17 Jr. also admitted during the hearing that Plaintiff's condition
18 had improved with medication.  (See AR 52.)

19     Dr. Montenegro's notes also indicate that by October 2007
20 Plaintiff's depression was "completely controlled" and by at
21 least May 2008 he was able to ride his bicycle to his
22 appointments on his own.  (See AR 351- 358.)  Plaintiff's ability
23 to exercise, socialize, manage his doctor's appointments on his
24 own, and perform various daily activities belies his and his
25 son's claims that his depression was severe.  See Bray v. Comm'r
26 of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009); Curry
27 v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that
28 claimant's ability to "take care of her personal needs, prepare

1    easy meals, do light housework and shop for some groceries . . .

2    may be seen as inconsistent with the presence of a condition

3    which would preclude all work activity") (citing <u>Fair v. Bowen</u>,

4    885 F.2d 597, 604 (9th Cir. 1989)).

5         Plaintiff is not entitled to remand on this ground.

6         B.   <u>The ALJ Did Not Err in Assessing Plaintiff's</u>

7              <u>Credibility</u>

8         Plaintiff argues that the ALJ failed to provide clear and

9    convincing reasons for discounting his credibility.  (J. Stip. at

10   17-23.)  Because the ALJ did provide clear and convincing reasons

11   supporting his evaluation of Plaintiff's testimony and those

12   reasons were supported by substantial evidence in the record,

13   reversal is not warranted on this basis.

14        1.   <u>Applicable law</u>

15        An ALJ's assessment of pain severity and claimant

16   credibility is entitled to "great weight."  <u>See</u> <u>Weetman v.</u>

17   <u>Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989); <u>Nyman v. Heckler</u>, 779

18   F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to

19   believe every allegation of disabling pain, or else disability

20   benefits would be available for the asking, a result plainly

21   contrary to 42 U.S.C. § 423(d)(5)(A)."  <u>Molina v. Astrue</u>, 674

22   F.3d 1104, 1122 (9th Cir. 2012).  In evaluating a claimant's

23   subjective symptom testimony, the ALJ engages in a two-step

24   analysis.  <u>See</u> <u>Lingenfelter</u>, 504 F.3d at 1035-36.  "First, the

25   ALJ must determine whether the claimant has presented objective

26   medical evidence of an underlying impairment [that] could

27   reasonably be expected to produce the pain or other symptoms

28   alleged."  <u>Id.</u> at 1036 (internal quotation marks omitted).  If

such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." Smolen, 80 F.3d at 1282 (emphasis in original).  When the ALJ finds a claimant's subjective complaints not credible, the ALJ must make specific findings that support the conclusion.  See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent affirmative evidence of malingering, those findings must provide "clear and convincing" reasons for rejecting the claimant's testimony.  Lester, 81 F.3d at 834.  If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing."  Thomas, 278 F.3d at 959.

2.  Relevant facts

On June 22, 2007, Plaintiff filled out a Function Report, mainly attesting to his mental condition.  (AR 235-42.)  He did not discuss his physical capacities.  (See id.)  On April 26, 2009, Plaintiff filled out another Function Report, again mostly discussing his mental condition, but he also stated that he was able to mow the lawn, take out the trash, and go grocery shopping.  (AR 262-69.)  He stated that his ability to lift, squat, bend, stand, and kneel was limited and that "because of my physical injuries [right] hip replacement, [left] knee microspopic [sic] surgery I can lift no more than 30 [pounds]" and "cannot bend squat or stand very long."  (AR 267.)  He stated that he could walk an eighth of a mile before having to rest for at least 15 minutes.  (Id.)  He stated that his family generally drove him places, but he was able to drive "for short distances

1  during the day."  (AR 269.)

2       At the hearing, Plaintiff testified that sometime in 2006 he

3  was injured in a fall and fractured his right hip, injured his

4  left knee, and hit his head and his shoulder.  (AR 34.)  He

5  stated that he took pain medication for his hip and knee but

6  could not remember what it was called.  (AR 36.)  He also

7  testified that he had been diagnosed with diabetes approximately

8  four months earlier and took insulin.  (AR 36-37.)

9            3.  Analysis

10      The ALJ found, "[a]fter careful consideration of the

11 evidence," that Plaintiff's "medically determinable impairments

12 could reasonably be expected to cause the alleged symptoms;

13 however, the claimant's statements concerning the intensity,

14 persistence and limiting effects of these symptoms are not

15 credible to the extent they are inconsistent with" the ALJ's RFC

16 assessment.  (AR 19.)  The ALJ noted that there were "significant

17 gaps" in Plaintiff's medical treatment for his physical ailments,

18 including the three years between May 2006 and March 2009.  (AR

19 19, 407-16.)  He noted that a physical exam by Plaintiff's

20 treating physician in November 2009 "revealed no joint swelling

21 or tenderness . . ., although the claimant's gait was antalgic"

22 and the doctor noted that Plaintiff was not able to sit or stand

23 for prolonged periods.  (Id.)  He noted that the most recent

24 evidence, from January 2010, showed that Plaintiff "has right

25 shoulder pain with decreased range of motion on exertion," but

26 there were no diagnostic images from January 2010 in the file.

27 (AR 20, 407.)  He discussed the effect of Plaintiff's obesity on

28 his ability to work as well as the opinions of Dr. Boeck, Dr. To,

and the two state agency reviewing physicians finding that
Plaintiff was able to perform a range of medium work with certain
additional limitations.  (AR 20, 307-11, 328-32, 380-85, 388-93,
406.)  He discussed the opinion of Plaintiff's treating
physician, Dr. Miguel Doningo, who opined that Plaintiff was
unable to perform even sedentary work because of his diabetes,
and rejected that opinion because it was unsupported by clinical
findings and inconsistent with the other evidence in the record
(AR 21, 451-53), a finding Plaintiff does not challenge.

    The ALJ then summarized Plaintiff's testimony and noted that
Plaintiff admitted that he was able to perform a range of daily
activities; medical reports revealed that Plaintiff was able to
walk long distances, exercise, and ride his bicycle, and
Plaintiff was not prescribed any pain medication, all of which
conflicted with Plaintiff's allegations of disabling pain.  (AR
21.)  Plaintiff's failure to mention his alleged mental
impairments until prompted by his attorney did "not work towards
[Plaintiff's] favor."  (AR 18.)  The ALJ concluded that
Plaintiff's

        pain allegations are not credible in light of the medical
        evidence.   While the claimant has complained that his
        pain level appears to be increasing with constant pain,
        the objective findings have not changed.  His condition
        does not show any deterioration or any additional medical
        difficulties.   Furthermore,  the  claimant  is  not
        prescribed any pain medications as his current list of
        medications only includes those for cholesterol and
        depression.

1  (AR 21.)   The ALJ therefore found Plaintiff's allegations of

2  disabling pain not credible.  (<u>Id.</u>)

3      Reversal is not warranted based on the ALJ's alleged failure

4  to make proper credibility findings or properly consider

5  Plaintiff's subjective symptoms.  To the extent Plaintiff

6  challenges the ALJ's rejection of his subjective testimony with

7  respect to his mood disorder, the ALJ's decision was supported by

8  substantial evidence for the reasons discussed above in Section

9  V(A).

10      With respect to Plaintiff's physical impairments, the ALJ

11  provided clear and convincing reasons for rejecting Plaintiff's

12  subjective symptom testimony to the extent it was inconsistent

13  with the RFC assessment.  (AR 26-30.)  All of the medical

14  evidence with the exception of Dr. Doningo's report – the

15  rejection of which Plaintiff does not challenge – indicated that

16  Plaintiff was capable of performing a range of medium work.  As

17  the ALJ noted, the record showed that Plaintiff was not taking

18  any prescription pain medication or undergoing any other

19  treatment for pain, which cast serious doubt on his allegations

20  of disabling pain.  (AR 21, 283, 380.)  Consulting orthopedist

21  Dr. William Boeck and consulting internist Dr. Brian To both

22  found after examining Plaintiff that he was able to perform a

23  range of medium work with certain additional limitations.  (AR

24  20, 307-11, 380-85.)  Drs. Boeck's and To's opinions were

25  supported by their own examinations of Plaintiff and test

26  results, including x-rays (<u>see</u> AR 308-10, 381-84), and thus

27  constituted substantial evidence upon which the ALJ could

28  properly rely.  See <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149

1   (9th Cir. 2001) (ALJ may rely on consulting physician's opinion

2   when it "rests on [physician's] own independent examination of

3   [claimant]"); Andrews, 53 F.3d at 1041.  Two state agency

4   reviewing physicians also reviewed the record and opined that

5   Plaintiff was capable of performing a range of medium work.  (AR

6   328-32, 388-93, 406.)  The ALJ was entitled to credit those

7   opinions as well because they were consistent with substantial

8   other evidence in the record.  See Thomas, 278 F.3d at 957.

9   Thus, the ALJ properly rejected Plaintiff's subjective testimony.

10  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161

11  (9th Cir. 2008) ("Contradiction with the medical record is a

12  sufficient basis for rejecting the claimant's subjective

13  testimony."); Lingenfelter, 504 F.3d at 1040 (in determining

14  credibility, ALJ may consider "whether the alleged symptoms are

15  consistent with the medical evidence"); Burch v. Barnhart, 400

16  F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence

17  cannot form the sole basis for discounting pain testimony, it is

18  a factor that the ALJ can consider in his credibility

19  analysis."); Kennelly v. Astrue, 313 F. App'x 977, 979 (9th Cir.

20  2009) (same); Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th

21  Cir. 2008) (ALJ may consider "unexplained or inadequately

22  explained failure to seek treatment" and may also infer that

23  claimant's "response to conservative treatment undermines

24  [claimant's] reports regarding the disabling nature of his

25  pain").

26      Moreover, as the ALJ noted, both Plaintiff and Humberto Jr.

27  admitted that Plaintiff was able to exercise and do various

28  chores around the house, such as going to the grocery store,

28

mowing the lawn, and taking out the trash.  (<u>Id.</u>)  Dr. Montenegro's notes also showed that Plaintiff often rode his bicycle to his medical appointments, further casting doubt on his claims of physical disability.  (AR 21, 342-44, 447-49.)  At approximately the same time as Humberto Jr. said Plaintiff could walk only around the block (<u>see</u> AR 259), Plaintiff told Dr. Montenegro that he walked three miles a day and four miles to one appointment (<u>see</u> AR 418).  That Plaintiff's allegations of disabling pain were inconsistent with his daily activities was also a valid reason for the ALJ to discount his testimony.  <u>See</u> <u>Bray</u>, 554 F.3d at 1227.

Because the ALJ gave clear and convincing reasons for his credibility finding and those reasons were supported by substantial evidence, the Court "may not engage in second-guessing."  <u>Thomas</u>, 278 F.3d at 959 (citation omitted). Plaintiff is not entitled to reversal on this claim.

C.   <u>The ALJ Did Not Err in Evaluating the Third-Party</u> <u>Testimony of Plaintiff's Son</u>

Plaintiff contends that the ALJ erred in considering the third-party reports submitted by Plaintiff's son, Humberto Jr., and Humberto Jr.'s hearing testimony.  (J. Stip. at 9-15.) Reversal is not warranted on this basis.

1.   <u>Applicable law</u>

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal quotation marks omitted)); <u>see also</u> 20

29

C.F.R. § 404.1513(d) (statements from therapists, family, and friends can be used to show severity of impairment(s) and effect on ability to work), § 416.913(d) (same). Such testimony is competent evidence and "cannot be disregarded without comment." Bruce, 557 F.3d at 1115 (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal quotation marks omitted)); Robbins, 466 F.3d at 885 ("[T]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings."). When rejecting the testimony of a lay witness, an ALJ must give specific reasons that are germane to that witness. Bruce, 557 F.3d at 1115; see also Stout, 454 F.3d at 1054; Nguyen, 100 F.3d at 1467.

If an ALJ fails to discuss competent lay testimony favorable to the claimant, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056; see also Robbins, 466 F.3d at 885. But "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." Molina, 674 F.3d at 1122 (quoting Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir. 2011)).

2.   Relevant facts

On June 22, 2007, Humberto Jr. filled out a Third Party Function Report, primarily attesting to Plaintiff's mental functioning. (AR 224-31.) On April 26, 2009, Humberto Jr. filled out another Third Party Function Report, again primarily

attesting to Plaintiff's mental functioning but also stating that Plaintiff was limited in his ability to lift, squat, bend, stand, and kneel; his "physical injuries affect ability to lift more than 30 [pounds]"; and "squatting, bending, kneeling [are] very hard to do." (AR 259.) He stated that Plaintiff could walk an eighth of a mile before needing to rest for 15 to 30 minutes. (Id.) He noted that Plaintiff did not need any assistive devices to move around and that he walked to the local market but family members drove him "everywhere else." (AR 260-61.)

At the hearing, Humberto Jr. testified about Plaintiff's depression and that Plaintiff was "overweight," "had arthroscopic knee surgery in his left knee," had "a complete replacement in his right hip" that limited his ability to move, walk, stand, and do other physical activities, and had diabetes, which required Humberto Jr. to administer insulin to Plaintiff. (AR 49.) He further testified that Plaintiff had "difficulty sitting and standing," could not sit or stand for more than one hour at a time, and could not walk farther than "a very short block." (AR 50.) He also testified that in his opinion, Plaintiff could not last eight hours at work and could not lift more than 10 pounds. (AR 51.) He stated that Plaintiff took a nap twice a day for 20 to 30 minutes. (Id.) He also stated that Plaintiff's "condition" was managed with medication and "a few exercises." (AR 52.)

            3.  Analysis

    The ALJ addressed Humberto Jr.'s statements and testimony in his written opinion as follows:

    I considered two third party function reports submitted

31

1    by the claimant's son and the testimony of the claimant's
2    son, in which he discussed the claimant's restrictions.
3    While these reports are not inconsistent with the
4    claimant's subjective complaints, it is not supported by
5    the greater objective medical evidence of record.
6    Therefore, I assign little weigh to these reports and
7    statements.

8  (AR 21 (citation omitted).)

9        The ALJ did not err in evaluating Humberto Jr.'s testimony
10 and reports.  To the extent the ALJ rejected those concerning
11 Plaintiff's mental condition, that decision was supported by
12 substantial evidence, for the reasons discussed above in Section
13 V(A).  To the extent the ALJ rejected Humberto Jr.'s statements
14 about Plaintiff's physical abilities, he gave specific reasons
15 for doing so and those reasons were supported by substantial
16 evidence.

17       Plaintiff argues that the ALJ's three-sentence rejection of
18 Humberto Jr.'s testimony and reports was insufficient.  (AR 13-
19 14.)  But the ALJ discussed the reasons for rejecting them in
20 connection with his reasons for rejecting Plaintiff's own
21 testimony and reports (see AR 21-22), and the two sources
22 provided substantially similar and repetitive information
23 (compare AR 49-52, 221-31, 254-61 with AR 32-38, 232-42, 262-69).
24 The ALJ did not need to separately summarize and discuss Humberto
25 Jr.'s statements when "the same evidence that the ALJ referred to
26 in discrediting" Plaintiff's testimony and reports also
27 discredited Humberto Jr.'s.  Molina, 674 F.3d at 1122.  As
28 discussed above in Section V(B), the ALJ gave clear and

convincing reasons for rejecting Plaintiff's subjective testimony and reports, and those reasons were supported by substantial evidence. Reversal is therefore not warranted on this basis.

**VI. CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[9] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 20, 2013

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[9] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

33