1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

HUMBERTO ROMERO,                    ) Case No. EDCV 12-0615-JPR
                                    )
                    Plaintiff,      )
                                    )
          vs.                       ) MEMORANDUM OPINION AND ORDER
                                    ) AFFIRMING THE COMMISSIONER
CAROLYN W. COLVIN, Acting           )
Commissioner of Social              )
Security,[1]                        )
                                    )
                    Defendant.      )
                                    )

I.    **PROCEEDINGS**

      Plaintiff seeks review of the Commissioner's final decision

denying his application for Social Security disability insurance

benefits ("DIB") and Supplemental Security Income benefits

("SSI").  The parties consented to the jurisdiction of the

undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).

This matter is before the Court on the parties' Joint

Stipulation, filed January 2, 2013, which the Court has taken

---

      [1]    On February 14, 2013, Colvin became the Acting
Commissioner of Social Security.  Pursuant to Federal Rule of
Civil Procedure 25(d), the Court therefore substitutes Colvin for
Michael J. Astrue as the proper Respondent.

1  under submission without oral argument.  For the reasons stated
2  below, the Commissioner's decision is affirmed and this action is
3  dismissed.

4  **II.  BACKGROUND**

5      Plaintiff was born on February 17, 1951.  (Administrative
6  Record ("AR") 32.)  He has some elementary-school education and
7  speaks "some" English.  (AR 32-33, 218.)  Plaintiff previously
8  worked as a warehouse worker and assembler.  (AR 43.)

9      On April 10, 2009, Plaintiff filed applications for DIB and
10 SSI.  (AR 14, 60-61.)  Plaintiff alleged that he had been unable
11 to work since April 20, 2007, because of his status after hip
12 replacement, osteoarthritis of the left shoulder, obesity, and a
13 mood disorder.  (Id.)  His applications were denied initially, on
14 July 14, 2009 (AR 80-85), and upon reconsideration, on October
15 23, 2009 (AR 88-93).

16     After Plaintiff's applications were denied, he requested a
17 hearing before an ALJ.  (AR 94-97.)  A hearing was held on
18 October 19, 2010, at which Plaintiff, who was represented by
19 counsel, appeared and testified through an interpreter; a medical
20 expert, a vocational expert ("VE"), and Plaintiff's son also
21 testified.  (AR 29-54.)  In a written decision issued on December
22 8, 2010, the ALJ determined that Plaintiff was not disabled.  (AR
23 8-28.)  On March 28, 2012, the Appeals Council denied Plaintiff's
24 request for review.  (AR 1-5.)  This action followed.

25 **III. STANDARD OF REVIEW**

26     Pursuant to 42 U.S.C. § 405(g), a district court may review
27 the Commissioner's decision to deny benefits.  The ALJ's findings
28 and decision should be upheld if they are free of legal error and

2

1 supported by substantial evidence based on the record as a whole.

2 § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct.

3 1420, 1427, 28 L. Ed. 2d 842 (1971); <u>Parra v. Astrue</u>, 481 F.3d

4 742, 746 (9th Cir. 2007).  Substantial evidence means such

5 evidence as a reasonable person might accept as adequate to

6 support a conclusion.  <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter</u>

7 <u>v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than

8 a scintilla but less than a preponderance.  <u>Lingenfelter</u>, 504

9 F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880,

10 882 (9th Cir. 2006)).  To determine whether substantial evidence

11 supports a finding, the reviewing court "must review the

12 administrative record as a whole, weighing both the evidence that

13 supports and the evidence that detracts from the Commissioner's

14 conclusion."  <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir.

15 1996).  "If the evidence can reasonably support either affirming

16 or reversing," the reviewing court "may not substitute its

17 judgment" for that of the Commissioner.  <u>Id.</u> at 720-21.

18 **IV.  THE EVALUATION OF DISABILITY**

19    People are "disabled" for purposes of receiving Social

20 Security benefits if they are unable to engage in any substantial

21 gainful activity owing to a physical or mental impairment that is

22 expected to result in death or which has lasted, or is expected

23 to last, for a continuous period of at least 12 months.  42

24 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257

25 (9th Cir. 1992).

26    A.  <u>The Five-Step Evaluation Process</u>

27    The ALJ follows a five-step sequential evaluation process in

28 assessing whether a claimant is disabled.  20 C.F.R.

3

§§ 404.1520(a)(4), 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform his past work; if so, the claimant is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv),

---

[2]     RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  20 C.F.R. §§ 404.1545, 416.945; <u>see</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

416.920(a)(4)(iv).  The claimant has the burden of proving that he is unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  <u>Id.</u>  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy.  §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  That determination comprises the fifth and final step in the sequential analysis.  §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.    The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since April 20, 2007.  (AR 16.)  At step two, the ALJ concluded that Plaintiff had the severe impairments of "status post hip replacement, osteoarthritis of the left shoulder and lumbar spine, and obesity."  (AR 16.)  He concluded that Plaintiff's "medically determinable mental impairment of mood disorder" was not severe.  (AR 17-18.)  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing.  (AR 18.)  At step four, the ALJ found that Plaintiff retained the RFC to perform "less than the full range of medium work," with certain additional limitations.  (AR 18-19.)  Based on the VE's testimony, the ALJ concluded that Plaintiff was unable to perform any past relevant work as actually or generally performed.  (AR 22.)  At step five, the ALJ concluded that Plaintiff was not disabled under the framework of the Medical-Vocational

1  Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and that

2  jobs existed in significant numbers in the national economy that

3  Plaintiff could perform.  (AR 22-23.)  Based on the VE's

4  testimony, the ALJ found that Plaintiff could perform such jobs

5  as hand packager (DOT 920.587-018, 1991 WL 687916) and dining

6  room attendant (DOT 311.677-018, 1991 WL 672696).  (AR 23.)

7  Accordingly, the ALJ determined that Plaintiff was not disabled.

8  (Id.)

9  **V.   DISCUSSION**

10     Plaintiff alleges that the ALJ erred in (1) finding that his

11 mental impairment was not severe; (2) evaluating the lay-witness

12 testimony of Plaintiff's son; and (3) evaluating Plaintiff's

13 credibility.[3]  (J. Stip. at 3-4.)

14     A.   The ALJ Did Not Err in Determining that Plaintiff's

15          Mood Disorder Was Not a Severe Impairment

16     Plaintiff first contends that the ALJ erred in determining

17 that his mood disorder was not a severe impairment.  (J. Stip. at

18 3-6.)  Reversal is not warranted on this basis because

19 substantial evidence in the record supports the ALJ's finding

20 that Plaintiff's mood disorder was not severe.

21          1.   Applicable law

22     At step two of the sequential evaluation process, a

23 plaintiff has the burden to present evidence of medical signs,

24 symptoms, and laboratory findings that establish a medically

25 determinable physical or mental impairment that is severe and can

26 ─────────────────────

27      [3]   The Court addresses Plaintiff's contentions in an order

28 different from that used by the parties, to avoid repetition and
   for other reasons.

be expected to result in death or last for a continuous period of at least 12 months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D));[4] see 20 C.F.R. §§ 404.1520, 416.920, 404.1509, 416.909. Substantial evidence supports an ALJ's determination that a claimant is not disabled at step two when "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." Ukolov, 420 F.3d at 1004-05 (citing SSR 96-4p). An impairment may never be found on the basis of the claimant's subjective symptoms alone. Id. at 1005.

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Applying the applicable standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."). An impairment or combination of impairments is "not severe" if the evidence

---

[4]     A "medical sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques." Ukolov, 420 F.3d at 1005.

7

established only a slight abnormality that had "no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (citation omitted).

### 2.   Relevant facts

On April 27, 2007, Plaintiff was seen at Upland Community Counseling by a clinician, Julie Porter, under the supervision of Dr. Guia Montenegro, because of "depressive and psychotic" symptoms.  (AR 336-41.)  After speaking with Plaintiff and his daughter, Porter noted that Plaintiff was "extremely unresponsive," reported eating and sleeping poorly, and was capable of "very limited" "self-care."  (AR 336-37.)  Based on speaking to his daughter, she noted that he appeared to have been depressed for the past two years but with a "recent onset of psychotic features (paranoia, delusional thinking)," in the preceding two weeks.  (Id.)  She diagnosed Plaintiff with "psychotic disorder [not otherwise specified]" and assessed a Global Assessment of Functioning ("GAF") score of 20.[5]  (AR 341.)

Plaintiff was prescribed medications for his depression and visited Dr. Montenegro approximately every one to two months between 2007 and 2010 for checkups.  (AR 342-44, 447-49.)  On January 25, 2008, Dr. Montenegro diagnosed Plaintiff with bipolar disorder and assessed a GAF score of 45.[6]  (AR 341.)  His

---

[5]   A GAF score of 20 indicates "[s]ome danger of hurting self or others," "occasionally fail[ing] to maintain minimal personal hygiene," or "gross impairment in communication."  See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

[6]   A GAF score of 45 indicates "serious symptoms ([e.g.] suicidal ideation . . .) OR any serious impairment in social, occupational or school functioning."  See Am. Psychiatric Ass'n,

treatment notes between 2007 and 2010, however, indicate that Plaintiff's symptoms markedly improved on medications and he had few, if any, ongoing issues. (See AR 345-66, 418-61.) For example, in May 2007, just a month after Plaintiff's original symptoms of psychosis, Dr. Montenegro noted that Plaintiff's affect was "better," he was "able to answer questions more than the last visit," and his paranoia was "still present, but improved." (AR 365.) In July 2007 Dr. Montenegro noted that Plaintiff's affect was "improved," he was "more verbal," his sleeping and eating habits had improved, and he had increased energy. (AR 362.) In October 2007, Dr. Montenegro noted that Plaintiff's affect was "markedly improved" and his "depression is completely controlled." (AR 358.) In May 2008, Dr. Montenegro noted that Plaintiff rode his bike on his own to his appointment, denied auditory and visual hallucinations and paranoia, and had a "good" appetite and a "stable" mood. (AR 351.) In April 2009, Dr. Montenegro noted that Plaintiff came to his appointment by himself, was "alert" and "compliant with medications," denied auditory and visual hallucinations and paranoia, and was eating and sleeping normally. (AR 345.) In March 2010, Dr. Montenegro noted that Plaintiff came to his appointment by himself, had lost 15 pounds by dieting and walking 30 minutes a day for exercise, denied auditory and visual hallucinations and paranoia, denied being depressed, and had "no problems with meds." (AR 418.) In August 2010, the most recent treatment notes in the record, Dr. Montenegro noted that Plaintiff "came in good spirits," was

_Diagnostic and Statistical Manual of Mental Disorders_ 34 (4th ed. 2000).

"compliant [with] medications," "feels better," "denies depression," slept 10-11 hours a night, "watches his diet [and] exercises," "walks 3 miles per day," denied audio and visual hallucinations and paranoia, and had no problems with his medications.  (AR 458.)

On August 27, 2007, Plaintiff was evaluated by consulting psychiatrist Dr. Ernest Bagner.  (AR 303-06.)  Dr. Bagner diagnosed Plaintiff with "depressive disorder, not otherwise specified," and assessed a GAF score of 73.[7]  (AR 305.)  He noted that Plaintiff had a "good" relationship with his friends and family; his affect was "mood congruent"; his thought processes were "tight"; his intellectual functioning was average; he was "alert to person and place"; he had adequate fund of knowledge, memory, concentration, abstractions, insight, and judgment; and there was "no evidence of auditory or visual hallucinations" or "paranoid or grandiose delusions."  (AR 304-05.)  Dr. Bagner concluded that Plaintiff "does self-care and other activities of daily living," "gets along well with family and friends," and, if he "continues with psychiatric treatment, . . . should be significantly better in less than six months."  (AR 305-06.)  Dr. Bagner opined that Plaintiff would have "no limitations interacting with supervisors, peers or the public," "zero to mild limitations maintaining concentration and attention and

---

[7]     A GAF score of 73 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors" and "no more than slight impairment in social, occupational or school functioning."  See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

completing simple tasks," "mild limitations completing complex
tasks and completing a normal workweek without interruption," and
"mild to moderate limitations handling normal stresses at work."
(AR 306.)

On September 5, 2007, consulting psychiatrist Dr. H. Amado
evaluated Plaintiff and filled out a Mental Residual Functional
Capacity Assessment form, noting that Plaintiff was "moderately
limited" in the ability to carry out detailed instructions,
maintain attention and concentration for extended periods,
complete a normal workday and workweek without interruptions from
psychologically based symptoms, perform at a consistent pace
without an unreasonable number and length of rest periods, and
respond appropriately to changes in the work setting.  (AR 312-
13.)  He found that Plaintiff was "not significantly limited" in
any other respect.  (Id.)  On the same day, Dr. Amado also
completed a Psychiatric Review Technique form, noting that
Plaintiff had depressive disorder, not otherwise specified, but
that insufficient evidence supported any other limitations.  (AR
315-22.)  He noted that Plaintiff had "moderate" difficulties in
maintaining concentration, persistence, or pace, "mild"
restrictions of activities of daily living and difficulties in
maintaining social functioning, and no episodes of
decompensation.  (AR 323.)  He noted that Plaintiff "has some
degree of psychomotor retardation . . . and mild/moderate
problems with sustained concentration . . . while the functional
information as per third-party seems to convey fairly pervasive
depression."  (AR 325.)  He concluded that although "[t]he
proposed Non-severe determination may be a little too optimistic

11

in this case," he "agree[d] that listings are not met and therefore allegations are only partially supported."  (AR 325.)

On June 3, 2009, Plaintiff underwent another consultative psychiatric evaluation, by psychiatrist Dr. H. Skopec.  (AR 367-77.)  Dr. Skopec noted that Plaintiff had depression and "mild" restrictions of activities of daily living, "mild" difficulties in maintaining social functioning and concentration, persistence, or pace, and no episodes of decompensation.  (<u>Id.</u>)  He concluded that Plaintiff was "partially credible" but "the psychiatric [symptoms] do not significantly decrease [Plaintiff's] ability to function."  (AR 377.)

On June 22, 2007, Plaintiff's son Humberto Romero, Jr., filled out a Third Party Function Report, stating that Plaintiff was "depressed," "hardly eats," refused to care for his personal needs, had lost interest in cooking and doing chores, was "scared to go outside," was unable to manage money, no longer pursued his hobbies of "gardening, watching TV, [and] working on cars," was "isolated" and "withdrawn from friends," could not handle "any stress at all," and was "paranoid."  (AR 224-31.)  On the same day, Plaintiff filled out a Function Report providing substantially the same information.  (AR 235-42.)

On April 26, 2009, Humberto Jr. filled out another Third Party Function Report,[8] stating that Plaintiff's daily activities

_____

[8]     Plaintiff's son gives his name as "Robert" on this form, whereas the June 2007 form lists his name as "Humberto R. Romero."  The handwriting is the same on both forms, and it appears that "Robert" may be Plaintiff's son's middle name.  (<u>See</u> AR 224, 255.)  For clarity, the Court refers to him as "Humberto Jr."  (<u>See</u> AR 46.)

consisted of "eat[ing], sleep[ing], tak[ing] meds, and watch[ing] TV" and then falling asleep, and "once a week [he] takes out trash." (AR 254.) He stated that Plaintiff "sleeps at odd hours (during day) and is lethargic," needed help with grooming and personal care, and could not prepare meals. (AR 255-56.) He also stated that Plaintiff mowed the lawn for 30 minutes every two weeks and took out the trash for 15 minutes every week; went outside for approximately one hour a day; did grocery shopping once a week for 30 minutes; watched TV for two to three hours daily; was able to "talk and share meals with family members"; and went to the doctor's office and to church. (AR 256-58.) He stated that Plaintiff could not follow written instructions well but could follow "very simple" spoken instructions and did not have any problems with authority figures. (AR 259-60.) He stated that "stress dampens disabled person['s] performance and accuracy" and "disabled person does not respond well to changes in routine." (AR 260.) He concluded by stating that Plaintiff could drive "very little" "for short trips during the day" and otherwise "walks to the local market and is driven everywhere else"; Plaintiff was "socially withdrawn from church and cares little of his physical appearance"; Plaintiff "lacks clarity of thought and many times has trouble following simple directions"; and Plaintiff's "mental sharpness is clouded and does not function at a normal level." (AR 261.) On the same day, Plaintiff filled out a Function Report providing substantially the same information. (AR 262-69.)

At the hearing, Plaintiff testified that he could not work because he had ongoing problems with his hip, left knee, and

right shoulder after he was injured in a fall in 2006.  (AR 34-35, 295-96.)  Although Plaintiff testified that he took medications for his pain (AR 36), the only prescribed medications appearing in the record were for depression, cholesterol, and diabetes (AR 251, 283).  The ALJ asked Plaintiff if he had "any other medical conditions, either physical or mental," that he claimed were disabling besides those stemming from his fall, and Plaintiff replied "no, none."  (AR 35.)  The ALJ then asked if Plaintiff's complaints "involve your hip, left knee, and you hit your head and your right shoulder?" and Plaintiff responded, "Yes."  (Id.)  It was only when later prompted by his attorney that Plaintiff testified that he also had "emotional problems" that limited his ability to work.  (Id.)  Plaintiff testified that he "felt a lot of anxiety" when he first sought psychiatric treatment in 2007, after having hip surgery, but answered "no" when asked if he had "any other kinds of mental health symptoms." (AR 35-36.)  He testified that he had problems remembering things "at times," but he "slept well at night . . . 10 or 11 hours." (AR 36.)

    Medical Expert Dr. Craig Rath then testified that he had reviewed the medical evidence in the record, and it indicated that Plaintiff had a medically determinable impairment of "mood disorder not otherwise specified, with depression and anxiety present."  (AR 39.)  Dr. Rath then summarized the treatment notes from Dr. Montenegro and noted that they indicated that Plaintiff's symptoms improved after he was placed on medication, in April 2007; Dr. Rath concluded that Plaintiff "had an emotional reaction to his physical situation which didn't last

14

very long, so there are durational issues and severity issues, and no limitations." (AR 40.) When questioned by Plaintiff's attorney, Dr. Rath reiterated that Plaintiff appeared to have been "depressed for a short period of time with possibly some psychotic symptoms, and he remained at some level of depression and anxiety, but not so bad to be psychotic." (AR 41.) He stated that a GAF score of 45 indicated "severe depression" but that that score in January 2008 was not indicative of Plaintiff's symptoms at that time because Dr. Montenegro did not perform a "multiaxial diagnosis" to update the GAF score but instead noted Plaintiff's progress in clinical notes. (AR 41-42.)

Humberto Jr. also testified at the hearing. (AR 46-52.) He testified that Plaintiff stopped working in April 2007 after "an onset of major depression," for which he started seeing Dr. Montenegro. (AR 48.) He testified that Plaintiff had anxiety, severe depression, and psychotic symptoms until he started seeing Dr. Montenegro, who put him on medication. (AR 48-49.) He stated that Plaintiff exercised and helped with grocery shopping, and he "tried" to look for work but had trouble finding jobs he was qualified to do. (AR 50-51.) He testified that Plaintiff's condition was "managed pretty much with the medications" and exercises, and his depression was "a little bit better, . . . a little bit more stable" after he started taking psychiatric medication, though his symptoms worsened when he didn't take his medication. (Id.)

3.  Analysis

In his written decision, the ALJ found that "a thorough review of the objective record supports the diagnosis of mood

15

disorder, [not otherwise specified] with symptoms of depression and anxiety" and that Plaintiff was "severely depressed for a brief period of time, likely with psychotic features," but his depression stabilized with medication and was not severe after that brief period. (AR 17.) The ALJ summarized the medical evidence from Dr. Bagner and Dr. Montenegro that indicated that Plaintiff's mood improved with medication, and he also noted that during the hearing Plaintiff said he had no impairments other than physical ones until his attorney prompted him to testify about his "emotional problems." (AR 17-18.) He concluded by finding that Plaintiff's

> mood disorder is a non-severe impairment because it results in only minimal limitations of functioning. Specifically, there are mild restrictions of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace. Furthermore, there are no episodes of decompensation. This is supported by the findings of two reviewing physicians for the State agency who opined the claimant's mental impairment was non-severe. This opinion is assessed great weight because it is consistent with the evidence of record and the medical expert's opinion.

> Thus, the claimant's medically determinable mental impairment does not cause minimal limitations in the claimant's ability to perform basic mental work activities and is therefore non-severe.

(AR 18 (citations omitted).)

16

Substantial evidence supports the ALJ's finding that Plaintiff's mood disorder was not severe.  Although evidence in the record shows that Plaintiff had some type of mood disorder, the existence of a mood disorder alone does not constitute a severe impairment if it does not prevent a person from working. See 20 C.F.R. § 404.1520(c) (severe impairment is one that "significantly limits [claimant's] physical or mental ability to do basic work activities"), § 416.920(c) (same).  Dr. Montenegro's notes from May 2007 to August 2010 show that Plaintiff's condition improved steadily after he was placed on medication, and by as early as October 2007 Plaintiff's affect was "markedly improved" and his depression was "completely controlled."  (AR 358; see AR 342-44, 447-49.)  All the way up until August 2010, Plaintiff continued to show few, if any, symptoms.  In August 2010, just two months before the ALJ hearing and the most recent notes in the record, Dr. Montenegro noted that Plaintiff was "in good spirits," was "compliant [with] medications," "feels better," "denies depression," slept 10 to 11 hours a night, "watches his diet [and] exercises," "walks 3 miles per day," denied audio and visual hallucinations and paranoia, and had no problems with his medications.  (AR 458.)  Drs. Bagner's and Skopec's reports showed that Plaintiff's mood disorder caused no more than minimal limitations on his ability to work.  (See AR 303-06, 312-25, 367-77.)  Based on the aforementioned evidence, the ALJ reasonably concluded that Plaintiff's mood disorder was effectively controlled with medication and did not affect his ability to work.  (AR 17); see 20 C.F.R. § 404.1529(c)(4)(iv) (ALJ may consider effectiveness of

medication in evaluating severity and limiting effects of impairment), § 416.929(c)(4)(iv) (same); <u>Beck v. Astrue</u>, 303 F. App'x 455, 457 (9th Cir. 2008) (holding that substantial evidence supported ALJ's finding that plaintiff's "sleep apnea and depression with anxiety are not severe impairments" because conditions could be "controlled effectively" with treatment and medical records "[did] not indicate any severe problems"); <u>Warre v. Comm'r of Soc. Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); <u>see also</u> <u>Fields v. Astrue</u>, No. EDCV 07-1442-JTL, 2008 WL 4384248, at *7 (C.D. Cal. Sept. 3, 2008) (holding that substantial evidence supported ALJ's finding that plaintiff's depression was "not severe and adequately controlled with mild anti-depressive medication with no more than mild functional limitations" because record showed that plaintiff "responds well to medications").

Dr. Rath's hearing testimony also supported the ALJ's determination that Plaintiff's mood disorder was not severe.  The ALJ found that Dr. Rath's opinion was consistent with the medical record.  (AR 17.)  Substantial evidence supported that finding; as noted above, virtually all of the medical evidence in the record showed that Plaintiff's mood disorder was effectively treated with medication and was not severe.  The ALJ was therefore entitled to rely on Dr. Rath's corroborative testimony as further evidence that Plaintiff's mood disorder was not severe.  <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians

may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it" (citing <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995)); <u>see</u> 20 C.F.R. §§ 404.1527(c)(4) (ALJ will generally give more weight to opinions that are "more consistent . . . with the record as a whole"), 416.927(c)(4) (same).  Dr. Rath reviewed all of the medical evidence and heard Plaintiff testify before rendering his opinion.  <u>See</u> 20 C.F.R. §§ 404.1527(c)(3) (in weighing medical opinions, ALJ "will evaluate the degree to which these opinions consider all of the pertinent evidence in [claimant's] claim, including opinions of treating and other examining sources"), 416.927(c)(3) (same).  Moreover, the ALJ could credit Dr. Rath's opinion because he testified at the hearing and was subject to cross-examination.  <u>See</u> <u>Andrews</u>, 53 F.3d at 1042 (greater weight may be given to nonexamining doctors who are subject to cross-examination).

To the extent Plaintiff ever had a "severe" mood disorder, the ALJ properly found that it did not last very long.  (AR 17.) An impairment is not severe unless it has lasted or is expected to last for a continuous period of at least 12 months.  20 C.F.R. §§ 404.1520(a)(4)(ii) ("If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509 . . ., we will find that you are not disabled."), 416.920(a)(4)(ii) (same, referencing

durational requirement in § 416.909); id. §§ 404.1509 (impairment "must have lasted or must be expected to last for a continuous period of at least 12 months"), 416.909 (same).  Dr. Montenegro's notes reflect that by May 2007, only a month after Plaintiff was first diagnosed with depression, his symptoms had started to improve (AR 365), and by October 2007 Plaintiff's affect was "markedly improved" and his "depression [was] completely controlled" (AR 358).  In August 2007, Dr. Bagner evaluated Plaintiff, found that Plaintiff would have only mild to moderate limitations handling normal stresses at work and zero to mild limitations in all other aspects, diagnosed him with a GAF score of 73 (indicating little to no impairment), and found that if he continued with treatment Plaintiff "should be significantly better in less than six months."  (AR 305-06.)  In September 2007 Dr. Amado evaluated Plaintiff and concluded that Plaintiff was only moderately limited in certain abilities and not significantly limited in any other respect.  (AR 312-13.)  After reviewing the evidence, Dr. Rath agreed that Plaintiff's mood disorder did not meet the 12-month durational requirement.  (AR 39-40.)  Substantial evidence thus supported the ALJ's finding that Plaintiff's mood disorder, to the extent it was ever "severe," did not last for the requisite 12 months.

Plaintiff argues that Dr. Montenegro's assessment of a GAF score of 45 in January 2008 shows that Plaintiff's condition had not improved over time.  (J. Stip. at 4-5.)  As an initial matter, a score of 45 was an improvement over the score of 20 eight months earlier, before Plaintiff began taking medications for his depression.  Dr. Rath testified that Dr. Montenegro's

1    treatment notes showed that Plaintiff's condition had improved,
2    the GAF score was likely a reflection of Plaintiff's past
3    condition, and nothing in the record indicated that it was
4    updated to show Plaintiff's progress after being treated for his
5    depression.  (AR 41-42.)  Dr. Bagner assessed a GAF score of 73
6    in August 2007 (AR 305), and nothing in the record indicates that
7    Plaintiff's condition worsened between then and January 2008 –
8    indeed, the record shows just the opposite (see AR 342-44, 447-
9    49).  Dr. Rath's testimony was thus consistent with the record.
10   Moreover, GAF scores "[do] not have a direct correlation to the
11   severity requirements in the Social Security Administration's
12   mental disorders listings," and an ALJ may properly disregard a
13   low GAF score if other substantial evidence supports a finding
14   that the claimant was not disabled.  Doney v. Astrue, 485 F.
15   App'x 163, 165 (9th Cir. 2012) (alterations and citations
16   omitted).  The only other medical evidence indicating that
17   Plaintiff's mood disorder may have been severe was Dr. Amado's
18   note in September 2007 – near the beginning of Plaintiff's mood
19   disorder – that "[t]he proposed Non-severe determination may be a
20   little too optimistic in this case."  (AR 325.)  But Dr. Amado
21   also found that Plaintiff was not severely limited in performing
22   any mental tasks and agreed that Plaintiff's allegations of the
23   severity of his symptoms were not entirely credible.  (See AR
24   312-25.)  Any conflict in the properly supported medical-opinion
25   evidence was the sole province of the ALJ to resolve.  See
26   Thomas, 278 F.3d at 956-57.

27        The only other evidence in the record concerning Plaintiff's
28   mood disorder was his own testimony and that of his son.

1  Plaintiff and his son both stated at the hearing and in their
2  function reports that Plaintiff's depression essentially rendered
3  him incapable of caring for himself and performing all but the
4  most basic activities.  (See AR 35-36, 39-45, 224-31, 235-42,
5  254-61, 262-69.)  But as the ALJ noted, Plaintiff initially
6  testified that the only conditions preventing him from working
7  were physical impairments; he had to be prompted by his attorney
8  before he mentioned his mood disorder.  (See AR 18, 35-36.)
9  Moreover, Plaintiff's and his son's 2009 function reports
10 indicated that his condition had improved since 2007 – they both
11 noted in 2009 that Plaintiff was able to once again do such
12 chores as grocery shopping and mowing the lawn, went outside for
13 at least an hour each day whereas in 2007 he was afraid to go
14 outside, had resumed his hobby of TV watching, exercised
15 regularly, and once again was socializing with his family and
16 with his friends at church.  (See AR 254-61, 262-69.)  Humberto
17 Jr. also admitted during the hearing that Plaintiff's condition
18 had improved with medication.  (See AR 52.)

19      Dr. Montenegro's notes also indicate that by October 2007
20 Plaintiff's depression was "completely controlled" and by at
21 least May 2008 he was able to ride his bicycle to his
22 appointments on his own.  (See AR 351- 358.)  Plaintiff's ability
23 to exercise, socialize, manage his doctor's appointments on his
24 own, and perform various daily activities belies his and his
25 son's claims that his depression was severe.  See Bray v. Comm'r
26 of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009); Curry
27 v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that
28 claimant's ability to "take care of her personal needs, prepare

1   easy meals, do light housework and shop for some groceries . . .

2   may be seen as inconsistent with the presence of a condition

3   which would preclude all work activity") (citing <u>Fair v. Bowen</u>,

4   885 F.2d 597, 604 (9th Cir. 1989)).

5           Plaintiff is not entitled to remand on this ground.

6       B.   <u>The ALJ Did Not Err in Assessing Plaintiff's</u>

7            <u>Credibility</u>

8           Plaintiff argues that the ALJ failed to provide clear and

9   convincing reasons for discounting his credibility.  (J. Stip. at

10  17-23.)  Because the ALJ did provide clear and convincing reasons

11  supporting his evaluation of Plaintiff's testimony and those

12  reasons were supported by substantial evidence in the record,

13  reversal is not warranted on this basis.

14          1.   <u>Applicable law</u>

15          An ALJ's assessment of pain severity and claimant

16  credibility is entitled to "great weight."  <u>See</u> <u>Weetman v.</u>

17  <u>Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989); <u>Nyman v. Heckler</u>, 779

18  F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to

19  believe every allegation of disabling pain, or else disability

20  benefits would be available for the asking, a result plainly

21  contrary to 42 U.S.C. § 423(d)(5)(A)."  <u>Molina v. Astrue</u>, 674

22  F.3d 1104, 1122 (9th Cir. 2012).  In evaluating a claimant's

23  subjective symptom testimony, the ALJ engages in a two-step

24  analysis.  <u>See</u> <u>Lingenfelter</u>, 504 F.3d at 1035-36.  "First, the

25  ALJ must determine whether the claimant has presented objective

26  medical evidence of an underlying impairment [that] could

27  reasonably be expected to produce the pain or other symptoms

28  alleged."  <u>Id.</u> at 1036 (internal quotation marks omitted).  If

1  such objective medical evidence exists, the ALJ may not reject a
2  claimant's testimony "simply because there is no showing that the
3  impairment can reasonably produce the *degree* of symptom alleged."
4  Smolen, 80 F.3d at 1282 (emphasis in original).  When the ALJ
5  finds a claimant's subjective complaints not credible, the ALJ
6  must make specific findings that support the conclusion.  See
7  Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent
8  affirmative evidence of malingering, those findings must provide
9  "clear and convincing" reasons for rejecting the claimant's
10 testimony.  Lester, 81 F.3d at 834.  If the ALJ's credibility
11 finding is supported by substantial evidence in the record, the
12 reviewing court "may not engage in second-guessing."  Thomas, 278
13 F.3d at 959.

14            2.   Relevant facts

15      On June 22, 2007, Plaintiff filled out a Function Report,
16 mainly attesting to his mental condition.  (AR 235-42.)  He did
17 not discuss his physical capacities.  (See id.)  On April 26,
18 2009, Plaintiff filled out another Function Report, again mostly
19 discussing his mental condition, but he also stated that he was
20 able to mow the lawn, take out the trash, and go grocery
21 shopping.  (AR 262-69.)  He stated that his ability to lift,
22 squat, bend, stand, and kneel was limited and that "because of my
23 physical injuries [right] hip replacement, [left] knee
24 microspopic [sic] surgery I can lift no more than 30 [pounds]"
25 and "cannot bend squat or stand very long."  (AR 267.)  He stated
26 that he could walk an eighth of a mile before having to rest for
27 at least 15 minutes.  (Id.)  He stated that his family generally
28 drove him places, but he was able to drive "for short distances

24

during the day."  (AR 269.)

     At the hearing, Plaintiff testified that sometime in 2006 he was injured in a fall and fractured his right hip, injured his left knee, and hit his head and his shoulder.  (AR 34.)  He stated that he took pain medication for his hip and knee but could not remember what it was called.  (AR 36.)  He also testified that he had been diagnosed with diabetes approximately four months earlier and took insulin.  (AR 36-37.)

               3.   Analysis

     The ALJ found, "[a]fter careful consideration of the evidence," that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the ALJ's RFC assessment.  (AR 19.)  The ALJ noted that there were "significant gaps" in Plaintiff's medical treatment for his physical ailments, including the three years between May 2006 and March 2009.  (AR 19, 407-16.)  He noted that a physical exam by Plaintiff's treating physician in November 2009 "revealed no joint swelling or tenderness . . ., although the claimant's gait was antalgic" and the doctor noted that Plaintiff was not able to sit or stand for prolonged periods.  (Id.)  He noted that the most recent evidence, from January 2010, showed that Plaintiff "has right shoulder pain with decreased range of motion on exertion," but there were no diagnostic images from January 2010 in the file.  (AR 20, 407.)  He discussed the effect of Plaintiff's obesity on his ability to work as well as the opinions of Dr. Boeck, Dr. To,

and the two state agency reviewing physicians finding that Plaintiff was able to perform a range of medium work with certain additional limitations.  (AR 20, 307-11, 328-32, 380-85, 388-93, 406.)  He discussed the opinion of Plaintiff's treating physician, Dr. Miguel Doningo, who opined that Plaintiff was unable to perform even sedentary work because of his diabetes, and rejected that opinion because it was unsupported by clinical findings and inconsistent with the other evidence in the record (AR 21, 451-53), a finding Plaintiff does not challenge.

The ALJ then summarized Plaintiff's testimony and noted that Plaintiff admitted that he was able to perform a range of daily activities; medical reports revealed that Plaintiff was able to walk long distances, exercise, and ride his bicycle, and Plaintiff was not prescribed any pain medication, all of which conflicted with Plaintiff's allegations of disabling pain.  (AR 21.)  Plaintiff's failure to mention his alleged mental impairments until prompted by his attorney did "not work towards [Plaintiff's] favor." (AR 18.)  The ALJ concluded that Plaintiff's

> pain allegations are not credible in light of the medical evidence.  While the claimant has complained that his pain level appears to be increasing with constant pain, the objective findings have not changed.  His condition does not show any deterioration or any additional medical difficulties.  Furthermore, the claimant is not prescribed any pain medications as his current list of medications only includes those for cholesterol and depression.

26

1   (AR 21.)   The ALJ therefore found Plaintiff's allegations of
2   disabling pain not credible.   (<u>Id.</u>)

3        Reversal is not warranted based on the ALJ's alleged failure
4   to make proper credibility findings or properly consider
5   Plaintiff's subjective symptoms.   To the extent Plaintiff
6   challenges the ALJ's rejection of his subjective testimony with
7   respect to his mood disorder, the ALJ's decision was supported by
8   substantial evidence for the reasons discussed above in Section
9   V(A).

10       With respect to Plaintiff's physical impairments, the ALJ
11  provided clear and convincing reasons for rejecting Plaintiff's
12  subjective symptom testimony to the extent it was inconsistent
13  with the RFC assessment.   (AR 26-30.)   All of the medical
14  evidence with the exception of Dr. Doningo's report – the
15  rejection of which Plaintiff does not challenge – indicated that
16  Plaintiff was capable of performing a range of medium work.   As
17  the ALJ noted, the record showed that Plaintiff was not taking
18  any prescription pain medication or undergoing any other
19  treatment for pain, which cast serious doubt on his allegations
20  of disabling pain.   (AR 21, 283, 380.)   Consulting orthopedist
21  Dr. William Boeck and consulting internist Dr. Brian To both
22  found after examining Plaintiff that he was able to perform a
23  range of medium work with certain additional limitations.   (AR
24  20, 307-11, 380-85.)   Drs. Boeck's and To's opinions were
25  supported by their own examinations of Plaintiff and test
26  results, including x-rays (<u>see</u> AR 308-10, 381-84), and thus
27  constituted substantial evidence upon which the ALJ could
28  properly rely.   See <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149

1   (9th Cir. 2001) (ALJ may rely on consulting physician's opinion

2   when it "rests on [physician's] own independent examination of

3   [claimant]"); Andrews, 53 F.3d at 1041.  Two state agency

4   reviewing physicians also reviewed the record and opined that

5   Plaintiff was capable of performing a range of medium work.  (AR

6   328-32, 388-93, 406.)  The ALJ was entitled to credit those

7   opinions as well because they were consistent with substantial

8   other evidence in the record.  See Thomas, 278 F.3d at 957.

9   Thus, the ALJ properly rejected Plaintiff's subjective testimony.

10  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161

11  (9th Cir. 2008) ("Contradiction with the medical record is a

12  sufficient basis for rejecting the claimant's subjective

13  testimony."); Lingenfelter, 504 F.3d at 1040 (in determining

14  credibility, ALJ may consider "whether the alleged symptoms are

15  consistent with the medical evidence"); Burch v. Barnhart, 400

16  F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence

17  cannot form the sole basis for discounting pain testimony, it is

18  a factor that the ALJ can consider in his credibility

19  analysis."); Kennelly v. Astrue, 313 F. App'x 977, 979 (9th Cir.

20  2009) (same); Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th

21  Cir. 2008) (ALJ may consider "unexplained or inadequately

22  explained failure to seek treatment" and may also infer that

23  claimant's "response to conservative treatment undermines

24  [claimant's] reports regarding the disabling nature of his

25  pain").

26      Moreover, as the ALJ noted, both Plaintiff and Humberto Jr.

27  admitted that Plaintiff was able to exercise and do various

28  chores around the house, such as going to the grocery store,

mowing the lawn, and taking out the trash. (Id.) Dr. Montenegro's notes also showed that Plaintiff often rode his bicycle to his medical appointments, further casting doubt on his claims of physical disability. (AR 21, 342-44, 447-49.) At approximately the same time as Humberto Jr. said Plaintiff could walk only around the block (see AR 259), Plaintiff told Dr. Montenegro that he walked three miles a day and four miles to one appointment (see AR 418). That Plaintiff's allegations of disabling pain were inconsistent with his daily activities was also a valid reason for the ALJ to discount his testimony. See Bray, 554 F.3d at 1227.

Because the ALJ gave clear and convincing reasons for his credibility finding and those reasons were supported by substantial evidence, the Court "may not engage in second-guessing." Thomas, 278 F.3d at 959 (citation omitted). Plaintiff is not entitled to reversal on this claim.

C.   The ALJ Did Not Err in Evaluating the Third-Party Testimony of Plaintiff's Son

Plaintiff contends that the ALJ erred in considering the third-party reports submitted by Plaintiff's son, Humberto Jr., and Humberto Jr.'s hearing testimony. (J. Stip. at 9-15.) Reversal is not warranted on this basis.

1.   Applicable law

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006) (internal quotation marks omitted)); see also 20

29

C.F.R. § 404.1513(d) (statements from therapists, family, and friends can be used to show severity of impairment(s) and effect on ability to work), § 416.913(d) (same).  Such testimony is competent evidence and "cannot be disregarded without comment." Bruce, 557 F.3d at 1115 (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal quotation marks omitted)); Robbins, 466 F.3d at 885 ("[T]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings.").  When rejecting the testimony of a lay witness, an ALJ must give specific reasons that are germane to that witness. Bruce, 557 F.3d at 1115; see also Stout, 454 F.3d at 1054; Nguyen, 100 F.3d at 1467.

If an ALJ fails to discuss competent lay testimony favorable to the claimant, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  Stout, 454 F.3d at 1056; see also Robbins, 466 F.3d at 885.  But "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." Molina, 674 F.3d at 1122 (quoting Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir. 2011)).

2.   Relevant facts

On June 22, 2007, Humberto Jr. filled out a Third Party Function Report, primarily attesting to Plaintiff's mental functioning.  (AR 224-31.)  On April 26, 2009, Humberto Jr. filled out another Third Party Function Report, again primarily

30

attesting to Plaintiff's mental functioning but also stating that
Plaintiff was limited in his ability to lift, squat, bend, stand,
and kneel; his "physical injuries affect ability to lift more
than 30 [pounds]"; and "squatting, bending, kneeling [are] very
hard to do." (AR 259.) He stated that Plaintiff could walk an
eighth of a mile before needing to rest for 15 to 30 minutes.
(Id.) He noted that Plaintiff did not need any assistive devices
to move around and that he walked to the local market but family
members drove him "everywhere else." (AR 260-61.)

At the hearing, Humberto Jr. testified about Plaintiff's
depression and that Plaintiff was "overweight," "had arthroscopic
knee surgery in his left knee," had "a complete replacement in
his right hip" that limited his ability to move, walk, stand, and
do other physical activities, and had diabetes, which required
Humberto Jr. to administer insulin to Plaintiff. (AR 49.) He
further testified that Plaintiff had "difficulty sitting and
standing," could not sit or stand for more than one hour at a
time, and could not walk farther than "a very short block." (AR
50.) He also testified that in his opinion, Plaintiff could not
last eight hours at work and could not lift more than 10 pounds.
(AR 51.) He stated that Plaintiff took a nap twice a day for 20
to 30 minutes. (Id.) He also stated that Plaintiff's
"condition" was managed with medication and "a few exercises."
(AR 52.)

　　　　　　3.　Analysis

The ALJ addressed Humberto Jr.'s statements and testimony in
his written opinion as follows:

I considered two third party function reports submitted

31

by the claimant's son and the testimony of the claimant's
son, in which he discussed the claimant's restrictions.
While these reports are not inconsistent with the
claimant's subjective complaints, it is not supported by
the greater objective medical evidence of record.
Therefore, I assign little weigh to these reports and
statements.

(AR 21 (citation omitted).)

The ALJ did not err in evaluating Humberto Jr.'s testimony
and reports.  To the extent the ALJ rejected those concerning
Plaintiff's mental condition, that decision was supported by
substantial evidence, for the reasons discussed above in Section
V(A).  To the extent the ALJ rejected Humberto Jr.'s statements
about Plaintiff's physical abilities, he gave specific reasons
for doing so and those reasons were supported by substantial
evidence.

Plaintiff argues that the ALJ's three-sentence rejection of
Humberto Jr.'s testimony and reports was insufficient.  (AR 13-
14.)  But the ALJ discussed the reasons for rejecting them in
connection with his reasons for rejecting Plaintiff's own
testimony and reports (see AR 21-22), and the two sources
provided substantially similar and repetitive information
(compare AR 49-52, 221-31, 254-61 with AR 32-38, 232-42, 262-69).
The ALJ did not need to separately summarize and discuss Humberto
Jr.'s statements when "the same evidence that the ALJ referred to
in discrediting" Plaintiff's testimony and reports also
discredited Humberto Jr.'s.  Molina, 674 F.3d at 1122.  As
discussed above in Section V(B), the ALJ gave clear and

32

convincing reasons for rejecting Plaintiff's subjective testimony and reports, and those reasons were supported by substantial evidence.  Reversal is therefore not warranted on this basis.

**VI.  CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[9] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 20, 2013

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[9]     This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."